**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NEXIDEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> PING IDENTITY CORPORATION, <br><br> Defendant. | Case No. 1:26-cv-2210 |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Nexiden, Inc. ("Nexiden"), by its undersigned counsel, alleges as follows for its Complaint against Defendant Ping Identity Corporation. ("Ping").

**THE NATURE OF THIS ACTION**

1. Nexiden brings this action against Ping pursuant to 35 U.S.C. §101 et. seq. and §§271, 281, 283, 284, & 285 inclusive, for infringement of one or more claims of U.S. Patent No. 9,521,548 entitled "Secure registration of a mobile device for use with a session" ("the '548 Patent") and U.S. Patent No. 10,592,872 entitled "Secure registration and authentication of a user using a mobile device" ("the '872 Patent").

**THE PARTIES**

2. Plaintiff Nexiden is a Delaware corporation with an address at 18383 Preston Rd, #202, Dallas, TX 75252. Nexiden is the owner by assignment of the '548 Patent and the '872 Patent, as shown on the cover page of each patent. Together, the '548 Patent and the '872 Patent are referred to herein as the "Asserted Patents."

3.      Defendant Ping Identity Corporation is a Delaware corporation with offices at 10801-3 North MoPac Expressway, Suite 300, Austin, Texas 78759.

4.      Ping makes, uses, offers to sell, and sells the accused products and systems, including the PingID mobile app and associated servers, systems, and services ("PingID") throughout the United States.  PingID meets all of the elements of at least one of the apparatus claims of the '548 Patent and at least one of the apparatus and/or system claims of the '872 Patent,. Thus Defendant's actions in making, using, offering to sell and selling PingID are acts of direct infringement of the Asserted Patents.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. §271 et seq.

6.      This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§271, 281 and 28 U.S.C. §§1331 and 1338(a), federal question.

7.      This Court has personal jurisdiction over Defendant because Defendant has an office in this District.

8.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has a regular and established place of business in this District and is committing acts of infringement in this District.

## BACKGROUND AND GENERAL ALLEGATIONS

9.      The inventors of the patents-in-suit are Klaus Fosmark and William A. Perry.  Mr. Fosmark and Mr. Perry are also the founders of Nexiden Inc., a Delaware corporation headquartered in Texas.  Mr. Fosmark is originally from Denmark where he earned a Master's Degree in Electrical Engineering and later immigrated to the United States to join a telecom startup, Efficient Networks, Inc in Dallas, TX, as a member of the founding engineering team along with Mr. Perry.  Mr. Perry and Mr. Fosmark together formed the technical leadership of Efficient Networks and are inventors on multiple patents in the area of telecom customer premises

equipment. After a very successful IPO in 1999, Mr. Fosmark and Mr. Perry continued to contemplate technology and business venture ideas.

10. In 2010, after the proliferation of smartphones, Mr. Fosmark and Mr. Perry focused on a second factor authentication business that would use a smartphone as the second factor. Unlike the competing industry at the time, the venture would focus on securing everything surrounding the base functions, such as the initial pairing of the phone and the use of cryptographic algorithms.

11. Three patent application were filed by Mr. Fosmark and Mr. Perry in 2012. Nexiden Inc. was incorporated in 2013. In parallel, product development of demonstration applications, including an iPhone app, were developed by Nexiden. With patents pending on the underlying security features, the Nexiden founders initially focused on product development. In spring of 2014, Nexiden was accepted into and graduated from the Dallas based startup accelerator program Tech Wildcatters.

12. Nexiden later streamlined operations to focus on intellectual property retention. Nexiden's patent applications matured into the two Asserted Patents. The '548 Patent 'issued in 2016, while the '872 Patent issued in 2020 as a continuation.

13. Inventors Mr. Fosmark and Mr. Perry assigned the '548 Patent to Nexiden at its founding, and the '872 Patent was assigned during prosecution. The assignments to Nexiden are recorded with the U.S.P.T.O., as reflected on the cover page of each of the Asserted Patents.

### U.S. PATENT NO. 9,521,548

14. On December 13, 2016, United States Patent No. 9,521,548 was duly and legally issued by the United States Patent and Trademark Office. The '548 Patent claims patent-eligible subject matter and is valid and enforceable.

15. Nexiden is the exclusive owner of all rights, title, and interest in the '548 Patent, including the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '548 Patent.

16.     Defendant is not licensed to the '548 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '548 Patent whatsoever.  A true and correct copy of the '548 Patent is attached hereto as **Exhibit A**.

17.     The '548 Patent is presumed valid under 35 U.S.C. § 282.  Plaintiff has at all times complied with 35 U.S.C. § 287.

18.     The claims of the '548 Patent are directed to "A non-transitory computer-readable medium embodying a computer program for registering a mobile device" (claims 1-30).  Claim 1 of the '548 Patent recites:

> 1. A non-transitory computer-readable medium embodying a computer program for registering a mobile device as being associated with a user, the computer program comprising computer-readable program code for:
>
> establishing, by a data processing system associated with an entity, a current session with the user via a data processing system associated with the user based at least in part on an account the user has or is creating with the entity;
>
> receiving, by the data processing system associated with the entity, a request to register the mobile device as being associated with the user to enable use of the mobile device for a future action associated with the account, the mobile device not previously registered with the entity as being associated with the user;
>
> generating, by the data processing system associated with the entity, a first message including a first registration identifier in response to receiving the request to register the mobile device as being associated with the user to enable use of the mobile device for the future action associated with the account;
>
> sending, by the data processing system associated with the entity, the first message including the first registration identifier to the data processing system associated with the user via a first communication path associated with the current session between the user and the entity;
>
> receiving, by the data processing system associated with the entity, a second message from the mobile device via a second communication path including a wireless communication link, the received second message including a second registration identifier;
>
> associating, by the data processing system associated with the entity, the mobile device with the user based on the second registration identifier being identical to at least one of the first registration identifier and a function of the first registration identifier; and

storing, by the data processing system associated with the entity, a public key associated with the mobile device for use of the mobile device with the future action associated with the account based on the associating of the mobile device with the user, the public key received from the mobile device in the second message or another message.

### U.S. PATENT NO. 10,592,872

19. On March 17, 2020, United States Patent No. 10,592,872 was duly and legally issued by the United States Patent and Trademark Office.  The '872 Patent claims patent-eligible subject matter and is valid and enforceable.

20. Nexiden is the exclusive owner of all rights, title, and interest in the '872 Patent, including the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '872 Patent.

21. Defendant is not licensed to the '872 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '872 Patent whatsoever.  A true and correct copy of the '872 Patent is attached hereto as **Exhibit B**.

22. The '872 Patent is presumed valid under 35 U.S.C. § 282.  Plaintiff has at all times complied with 35 U.S.C. § 287.

23. The claims of the '872 Patent are directed to a "non-transitory, computer-readable medium" for secure registration and of a mobile device (claims 1-8) and a "server data processing system" for secure registration of a mobile device (claims 9-17).  Claim 1 of the '872 Patent recites:

> 1. A non-transitory, computer-readable medium comprising program code that, when executed by a processor of a server data processing system, causes the server data processing system to:
>
> receive, from a mobile device via a path including a wireless communication link, a message including a registration code and identification information of the mobile device for registration of the mobile device as associated with a user identifier for authentication of the user identifier for future authentication sessions;
>
> determine whether the received registration code matches at least one of a registration code generated prior to the receipt of the received registration code or a function of the prior generated registration code; and

register, in response to determining that the received registration code matches at least one of the prior generated registration code or the function thereof, the mobile device as associated with the user identifier for authentication of the user identifier for future authentication sessions and storing the identification information of the mobile device,

during one of the authentication sessions:

receive the user identifier via a user interface for the one authentication session,

for an online authentication mode, authenticate the user identifier for the one authentication session based on receiving an authentication confirmation from the mobile device via a path including a wireless communication link rather than through the one authentication session in response to an authentication request sent to the mobile device by the server data processing system via a path including a wireless communication link,

for an offline authentication mode, authenticate the user identifier for the one authentication session based on receipt, via the user interface for the one authentication session, of an authentication code identified by the mobile device, and

automatically switch from the online authentication mode to the offline authentication mode, based on at least detecting that the server data processing system is not able to connect to the mobile device based on detecting that the server data processing system is not receiving the authentication confirmation from the mobile device.

## INFRINGEMENT OF THE '548 PATENT

24.    Ping uses, offers for sale, sells, provides, distributes, licenses, supplies, and services the PingID mobile app and associated systems and services which infringe the claims of the Asserted Patents. Additional infringing software, services, and systems may be identified through discovery.

25.    The accused PingID mobile app and associated systems and services infringe at least claims 1, 4-7, 9-15, 18-20, 22-25, 27, 29, and 30 of the '548 Patent and at least claims 1, 2, 4-7, 9, 10, 12-15, and 17 of the '872 Patent.

26.    Defendant manufactures, uses, offers for sale, sells, provides, distributes, licenses, supplies, and services the PingID mobile app and associated systems and services which include

non-transitory computer-readable medium embodying a computer program for registering a mobile device as being associated with a user.

27.    Defendant Ping has directly infringed, literally or under the doctrine of equivalents, at least claims 1, 4-7, 9-15, 18-20, 22-25, 27, 29, and 30 of the '548 Patent and at least claims 1, 2, 4-7, 9, 10, 12-15, and 17 of the '872 Patent under 35 U.S.C. § 271(a) by making, using, distributing, offering to sell, selling and/or importing into the United States, the PingID mobile app and associated systems that infringe the asserted claims.

28.    Plaintiff has conducted a detailed analysis of PingID, establishing and confirming that the Defendant directly infringes the Asserted Patent claims directly.



29.    A demonstration of the correspondence of the operation of the PingID mobile app and associated systems and services with elements of an exemplary but non-representative claim of the '548 Patent is included below.

30.     PingID includes the non-transitory computer-readable medium embodying a computer program for registering a mobile device as being associated with a user as recited in the preamble of Claim 1 and as claimed in the elements of Claim 1 of the '548 Patent, as evidenced by the information describing PingID below.

['548 Patent, Claim 1, preamble]

*A non-transitory computer-readable medium embodying a computer program for registering a mobile device as being associated with a user, the computer program comprising computer-readable program code for:*

PingID comprises software (computer readable medium embodying a computer program) for registering a mobile device.



['548 Patent, Claim element 1.a]

*establishing, by a data processing system associated with an entity, a current session with the user via a data processing system associated with the user based at least in part on an account the user has or is creating with the entity;*

Ping establishes a session (a web session) with the user.  The "entity" of this claim is Ping.  As an example, the session may be initiated in the PingID system by a user on a computer logging into the user's previously-created PingID account or by the user creating a new PingID account.



Complaint                                        8                              Case No.  1:26-cv-2210

['548 Patent, Claim element 1.b]

*receiving, by the data processing system associated with the entity, a request to register the mobile device as being associated with the user to enable use of the mobile device for a future action associated with the account, the mobile device not previously registered with the entity as being associated with the user*

After the user has logged in, the PingID server receives a request to register the user's mobile device so that the PingID user may use the Ping registration and identity verification services in the future via the mobile device.  This process is also shown at the YouTube video produced by Ping at the link shown here:



https://www.youtube.com/watch?v=k5vN7af78do

['548 Patent, Claim element 1.c]

*generating, by the data processing system associated with the entity, a first message including a first registration identifier in response to receiving the request to register the mobile device as being associated with the user to enable use of the mobile device for the future action associated with the account;*

The Ping server generates a first registration identifier, such as a QR code, in response to the request received.



['548 Patent, Claim element 1.d]

*sending, by the data processing system associated with the entity, the first message including the first registration identifier to the data processing system associated with the user via a first communication path associated with the current session between the user and the entity;*

The PingID server then sends the generated first registration identifier (QR code) to the user's computer via the existing communication path used by the web session  in response to the request received



https://www.youtube.com/watch?v=k5vN7af78do

['548 Patent, Claim element 1.e]

*receiving, by the data processing system associated with the entity, a second message from the mobile device via a second communication path including a wireless communication link, the received second message including a second registration identifier;*

When the QR code is scanned by the user, the PingID server then receives a message from the mobile device that scanned the code (a second message) via the mobile device's wireless network (e.g. cellular or wifi connection) to the mobile phone (a



second communication path).  This message includes a second registration identifier.

Complaint                                    10                        Case No.  1:26-cv-2210

['548 Patent, Claim element 1.f]

*associating, by the data processing system associated with the entity, the mobile device with the user based on the second registration identifier being identical to at least one of the first registration identifier and a function of the first registration identifier;*

The PingID server then registers the phone based on comparing the transmitted registration identifier (QR code) and received registration identifiers (identifier transmitted from the mobile device).



['548 Patent, Claim element 1.g]

*storing, by the data processing system associated with the entity, a public key associated with the mobile device for use of the mobile device with the future action associated with the account based on the associating of the mobile device with the user, the public key received from the mobile device in the second message or another message*

The PingID server registers a public key associated with the user's mobile device (phone) as part of the registration.  Thereafter, the phone is associated with the user based on the public key.



31.    A demonstration of the correspondence of the operation of the PingID mobile app and associated systems and services with elements of an exemplary but non-representative claim of the '872 Patent is included below.

32.    PingID includes the non-transitory computer-readable medium embodying a computer program for registering a mobile device as being associated with a user as recited in the preamble of Claim 1 and as claimed in the elements of Claim 1 of the '872 Patent, as evidenced by the information describing PingID below.

['872 Patent, Claim 1, preamble]

*A non-transitory, computer-readable medium comprising program code that, when executed by a processor of a server data processing system, causes the server data processing system to:*

PingID comprises software (computer readable medium embodying a computer program) for registering a mobile device.



['872 Patent, Claim element 1.a]

*receive, from a mobile device via a path including a wireless communication link, a message including a registration code and identification information of the mobile device for registration of the mobile device as associated with a user identifier for authentication of the user identifier for future authentication sessions;*

The PingID server receives from a message from the user's mobile device (e.g., through a wireless network) that includes a registration code and phone identification information.  The message is used for registration of the mobile device in association with a user identifier (e.g., user name or other unique code that identifies the particular user).



Complaint                                    12                                    Case No.  1:26-cv-2210

['872 Patent, Claim element 1.b]

*determine whether the received registration code matches at least one of a registration code generated prior to the receipt of the received registration code or a function of the prior generated registration code; and*

The PingID server compares the received registration code (see previous element) and a code previously generated.



['872 Patent, Claim element 1.c]

*register, in response to determining that the received registration code matches at least one of the prior generated registration code or the function thereof, the mobile device as associated with the user identifier for authentication of the user identifier for future authentication sessions and storing the identification information of the mobile device,*

When the received code matches the generated code, the PingID server registers the phone identification information as being associated with the user ID. The identification information of the mobile device is stored by PingID for authenticating the mobile device in future sessions.



Complaint                                          13                              Case No.  1:26-cv-2210

['872 Patent, Claim element 1.d]

*during one of the authentication sessions: receive the user identifier via a user interface for the one authentication session,*

The PingID server receives a user user identifier sent by a user during an authentication attempt (*e.g.*, via a web session with a web server) via a user interface (*e.g.*, a web interface on a computer web browser).



['872 Patent, Claim element 1.e]

*for an online authentication mode, authenticate the user identifier for the one authentication session based on receiving an authentication confirmation from the mobile device via a path including a wireless communication link rather than through the one authentication session in response to an authentication request sent to the mobile device by the server data processing system via a path including a wireless communication link,*

In the online mode, and for the particular authentication session (see element above) the PingID server sends an authentication request to the user's mobile device (e.g., via wireless network). The PingID server then receives authentication confirmation



sent back from the user phone (e.g., via wireless network) to the PingID server. In response to receiving the authentication confirmation, the PingID server authentications the user identifier for the authentication session.

['872 Patent, Claim element 1.f]

*for an offline authentication mode, authenticate the user identifier for the one authentication session based on receipt, via the user interface for the one authentication session, of an authentication code identified by the mobile device, and*

In the offline mode, and for the particular authentication session (see above) the PingID server authenticates the user based on receiving an authentication code displayed by the user mobile device. The code is received by PingID server after being



entered, for example, into the web portal discussed above. In response to receiving the authentication code, the PingID server authentications the user identifier for the authentication session.

['872 Patent, Claim element 1.g]

*automatically switch from the online authentication mode to the offline authentication mode, based on at least detecting that the server data processing system is not able to connect to the mobile device based on detecting that the server data processing system is not receiving the authentication confirmation from the mobile device.*

The PingID Server supports both online and offline mode and will use the mode corresponding to the input it receives and automatically switch to the offline mode.



33.     Upon information and belief, Defendant has directly infringed and continues to directly infringe one or more claims of the Asserted Patents under 35 U.S.C. §271(a):

"(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United

States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

34. Defendant does not have a license or authority to use or practice the Asserted Patents.

35. Upon information and belief, Defendant has no good faith defense to Plaintiff's infringement allegations.

36. Prior to filing this action, Nexiden sent correspondence to Ping on March 10, 2023 and September 3, 2024 offering Ping to consider a license under the Asserted Patents. As a result, Ping has had actual knowledge of the Asserted Patents since receipt of the correspondence in 2023 and were aware of the infringement through the identification of products and claims and description of the Defendant's infringing activities in the attachments to the correspondence. Defendant has since that time and is now intentionally continuing their knowing infringement.

37. As a result of Defendant's infringement of the Asserted Patents, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO 9,521,548

38. The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

39. Defendants have infringed claims at least claims 1, 4-7, 9-15, 18-20, 22-25, 27, 29, and 30 of the '548 Patent, under 35 U.S.C. § 271(a), by making, using, offering to sell, selling the PingID mobile app and associated systems in the United States.

40. Defendants do not have license or authority to the '548 Patent.

41. As a result of Defendant's infringement of the '548 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

42.    Defendant's infringement has been willful at least since March 10, 2023 and continues to this day.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO 10,592,872

43.    The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

44.    Defendants have infringed at least claims 1, 2, 4-7, 9, 10, 12-15, and 17 of the '872 Patent, under 35 U.S.C. § 271(a), by making, using, offering to sell, selling the PingID mobile app and associated systems in the United States.

45.    Defendants do not have license or authority to the '872 Patent.

46.    As a result of Defendant's infringement of the '872 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

47.    Defendant's infringement has been willful at least since March 10, 2023 and continues to this day.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

a.    For Judgment declaring that PING has infringed the '548 Patent and the '872 Patent;

b.    For a judgment awarding Plaintiff compensatory damages as a result of Defendants' infringement sufficient to reasonably and entirely compensate Plaintiff for infringement of the Asserted Patents in an amount to be determined at trial of at least a reasonable royalty;

c.    For a judgment declaring that this case is exceptional and awarding Plaintiff its expenses, costs and attorneys' fees in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

d. For a judgment awarding Plaintiff prejudgment interest pursuant to 35 U.S.C. §284, and a further award of post judgment interest, pursuant to 28 U.S.C. §1961, continuing until such judgment is paid.

e. For a judgment awarding Plaintiff enhanced damages under 35 U.S.C. §284; and

f. For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure Rule 38(b), Plaintiff hereby demands trial by jury as to all claims in this litigation.


Dated: August 12, 2026                           Respectfully submitted,


                                                     */s/ Joseph J. Zito*                .
                                                 Joseph J. Zito
                                                 DNL ZITO
                                                 1250 Connecticut Avenue, NW, #700
                                                 Washington, DC 20036
                                                 202-466-3500
                                                 jzito@dnlzito.com

                                                 Benjamin C. Deming (TX Bar No. 24091778)
                                                 DNL ZITO
                                                 3232 McKinney Ave. #500
                                                 Dallas, TX 75204
                                                 214-799-1145
                                                 bdeming@dnlzito.com

                                                 *Attorneys for Plaintiff Nexiden, Inc.*